UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jason Goode | 3:15-CV-00561-AVC |
| v. | |
| Edward Maldonado, | June 11, 2015 |
| Michael Parumi | |
| Tony Williams | |
| Amy Griffin | |
| Scott Erfi | |
| Captain Dougherty | |
| Captain Watson | |

SCANNED at
and Emailed
6/12/15 by H . 27 pages
date       initials    No.

## Amended Complaint

1. This is a civil rights action filed by
   Jason Goode (Plaintiff) for declartory and
   injunctive relief as well as monetary
   damages pursuant to 42 U.S.C. § 1983
   for violation of plaintiff's Right to reasonable
   expectation of privacy under the fourth Amend-
   ment; to be free from cruel and unusual punish-
   ment by way of unjustified bodily restraint as
   guaranteed to be free from under the Eighth
   Amendment of the United States Constitution, for

Violating plaintiff's Rights to exercise his religion pursuant to the Religious Land Use And Institution- alized Person Act (RLUIPA), 42 U.S.C. § 2000 cc and the First Amendment as well as violating plaintiff's Eighth Amendment Right of Cruel and Unusual punishment of subjecting plaintiff to dangerous amounts of Second-hand Chemical agents.

## PARTIES

2. Plaintiff, Jason Goode, is a prisoner in the custody of the Connecticut Department of Cor- rection Institution who was then confined at the Northern Correction Institution in Somers, Connecticut when some of these events occurred, as described herein, but who is now housed at the MacDougal-Walker Correction Institution in Suffield, Connecticut.

3. Defendant Edward Maldonaldo (Maldonaldo) who was warden at the Northern Correctional Institution (NCI). As such, he was responsible for the creation and enforcement of policies at the NCI, the training and supervision of per- sons working at the NCI, and the custody

2

and care of inmates at Northern. At all times, he was acting within the scope of his employment and under the color of state law. He is sued in both his capacities: Individual and official.

4. Defendant Michael Pafumi (Pafumi) who was, then, a correction lieutenant at the NCI and responsible for the supervisor of lower-line officers and overall oversight of inmates during his work shift. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his individual capacity.

5. Defendant Tony Williams (Williams) who is a correctional lieutenant at the NCI is responsible for the supervision of lower-line officers and over-all oversight of inmates during his work shift. At all relevant times, he was acting within the scope of his employment and under the color of state law. He is being sued in his individual capacity.

6. Defendant Amy Griffin (Griffin) who was, then, a Correction lieutenant at the NCI (but now employed as a Correction Captain at the Corrigan - Ragowski

3

Correction Center in Uncasville) was responsible
for the supervision of lower line officers and
oversight of inmates during her work shift. At
all relevant times, she was acting within the
scope of her employment and under the color of
state law. She is being sued in her individual
capacity.

7.      Defendant Scott Erfi (Erfi) who was then
        warden at the Corrigan-Ragowski Correction
        Center (CRCC) (but who now is warden at
        the Cheshire Correction Institution) was respon-
        sible for the creation and enforcement of po-
        licies at the CRCC, the training and super-
        vision of persons working at the CRCC,
        and of the custody and care at that
        facility. At all relevant times, he was
        working within the scope of his employ-
        ment and under the color of state law.
        He is being sued in his individual cap-
        acity, as well his official capacity.

8.      Defendant Dougherty who is a Correc-
        tion Captain at the Corrigan Correction
        Center. At all relevant times was
        acting within the scope of his employ-

4.

ment and under the color of state law.
He is being sued in his official and
individual capacities

9.    Defendant Watson, who is a Correction
      Captain at the Cheshire Correction
      Institution, at all relevant times,
      was acting within the scope of his
      employment and under the color of
      state law. He is being sued in
      both individual and official capacities.

## Jurisdiction & Venue

10.   This court has subject-matter over this
      action pursuant to 28 U.S.C. 1331
      because this action arises under
      the Constition and laws of the
      United States and pursuant to 28
      U.S.C. § 1343(a)(3) because this
      action seeks redress of the depriva-
      tions of the Constitutional rights under
      the color of state law.

11.   This court has jurisdiction to grant

declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and of the Federal Rules of Civil Procedure 57.

12. This court has jurisdiction to grant injunctive relief pursuant to Federal Rules of Civil Procedure 65.

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 (b) because Defendants reside in this district and a part of the events or omissions giving rise to plaintiff's claims occurred in this district.

## STATEMENT OF FACTS

Allowance of Un-
lawful policy

14. Then warden, Defendant Maldonaldo, of the NCI was aware of his unlawful policy or maintaining that policy (i.e., "Staff Observation and Review" of Administrative Directive no. 6.51) which permitted prisoners (in his institution) to be

6.

17. Past these filings, Defendant Maldonaldo declined to rectify the deliberate misuse occurring within the policy and/or the policy itself by denying plaintiff's grievances.


Allowance of
Unlawful policy
or protocol, II

18. On September 14, 2012, at approximately 8:30pm, in the NCI, plaintiff's neighbor (Kenyon Joseph #207827) in cell no. 205 in the 1-East housing Unit was being sprayed with with unreasonable and substantial amounts of Cap-Stun by then lieutenant Anaya.

19. Plaintiff then began to cough and choke uncontrollably.

20. Plaintiff, next, kicked his celldoor and shouted at lieutenant Anaya and to others officers to stop the spraying and to obtain a nurse for him (plaintiff), but

8.

unjustifiably maintained on "In-cell restraint status" for prolonged periods on account of his officers intentionally fabricating a document entitled: "CN 6503, Restraint Checklist" of that policy.

15.   Defendant Maldonaldo became aware of this intentional misuse, described in the preceding paragraph, when plaintiff wrote an inmate Grievance about De- fendant Pafumi having placed the plaintiff on In-cell restraint status for an un- warranted period of time, which was April 2, 2012, grievance IGP# 141-12- 429.

16.   In another Inmate Grievance, filed in the month of June 2012 by the plaintiff, plaintiff, again, complained to Defendant Maldonaldo about Defendant Griffin main- taining the plaintiff in chains (i.e. "In- cell Restraint Status) for prolonged periods when the plaintiff's demeanor had been long cool and composed.

these officers ignored the plaintiff pleas and
continued spraying prisoner Joseph.

21. Plaintiff finally obstructed his cell-door
window with toilet paper in hopes
officers would eventually take notice and
ask the plaintiff what was his issue.

25. Long moments later lieutenant Kurtz fin-
ally came on the site, knocked on
plaintiff's door and inquired to him
why his cell-door window had been cov-
ered.

26. Nearly unable to communicate the reason for
this, plaintiff (in between breaths) told
lieutenant Kurtz that he could not fully
breath due to the chemical agents and
needed medical attention.

27. Yet coughing and choking— with now a mildly
aching chest — the incident with prisoner
Jospeh had finally ended and, the plain-
tiff was removed from his cell and es-
corted to the "medical screening room" for
medical attention.

9.

28. Upon completion of that examination, plaintiff was placed in a secured shower stall until his cell was cleared of the lingering chemical vapors.

29. The entire deployment duration of cap-stun being used upon Joseph was some forty (40) minutes.

30. Prior, during and post the incident, described in the preceding paragraph, no uninvolved inmates on plaintiff tier were ever removed from their cells for second-hand decontamination purposes; nor was any portable exhaust fan brought in or ceiling fan activated for defumigation.

31. Then warden, Defendant Maldonaldo, of the NCI was fully aware of this unlawfully policy or protocol when plaintiff, in the month of September 2012, grieved this matter to Defendant Maldonaldo but, who in turn, failed to act to remedy this policy or protocol by denying plaintiff grievance.

Restraints: Deprivation
of the right of
<u>bodily liberty, I</u>

32. On April 2, 2012, Correctional administrat-
ors (e.g., warden, deputy warden, ect.) had au-
thorized a closure of a housing unit in the
Northern Correction Institution along with
said program progression moves.

33. On the same date at 3:20 pm, Defendant
Pafumi arrived at the plaintiff's cell door
(in the 1-West housing unit) with other
officers and inquired to the plaintiff if he
was going to accept a cellmate.

34. Plaintiff declined by stating "no".

35. Defendant Pafumi then instructed the
plaintiff to come to the trap-slot in
his cell door and to submit to handcuffs,
which the plaintiff complied.

36. Plaintiff was next escorted by a team of Correction officers at the orders of and under the supervision of Defendant Pafumi to the 3-East housing unit where plaintiff was placed on "In-cell Restraint Status", which is when a prisoner is left handcuff with a nearly three (3) foot tether chain connecting to applied shackle and padlock along with just a mattress and bedding in a secured cell.

37. On April 3, 2012, Defendant Williams claimed to have reviewed plaintiff while on the status of restraints and then made the determination to maintain the plaintiff on this status, despite the plaintiff's bearing having been clearly stoic at the time.

38. Lieutenant Pafumi was the lead defendant on April 2, 2012 who ordered that the plaintiff be chained up in a cell, even though plaintiff posed no physical danger to himself, others or property at the time.

12

39. Plaintiff was left on this status for two and a half days and had consequently urinated and partially defecated on himself due to bathroom brakes not being offered.

Strip-Search: Violation to reasonable expectation of privacy

40. On June 5, 2012, at approximately 1:45 am in the Northern Correctional Institution, plaintiff was escorted by correction officers to a strip-cell, per the orders of Defendant Griffin, after having been sprayed with Cap-Stun by her in his cell (1-East housing unit\ 110).

41. Though a male lieutenant was in the surrounding area of the cell to conduct the strip-search on plaintiff, Defendant Griffin inserted her presence and singularly ordered officers to completely strip the plaintiff free of his clothing while she watched despite plaintiff's law-oriented admonish-

13

ments and admonishments of propriety for
her to remove herself.

42.  Defendant Griffin, hearing these caveats
     from plaintiff to properly excuse herself,
     however, remained, inappropriately looking
     on during the course of the strip-search
     procedure, blatantly violating correction
     institutional policy (i.e., Section B of
     Unit Administrative Directive no. 6.7.1)
     to allow for same-sex strip searches.


Restraints: Deprivation
of the right of bodily
liberty, II

43.  Following the events described in paragraphs
     #40 through #42 in this complaint, plaintiff
     was ultimately placed on In-cell restraint
     status for previously disruptive conduct by
     Defendant Griffin until the next morning
     (..., June 6, 2012, 8:30am) despite plaintiff
     having remained calm.

44.  During those several hours of being

unjustifiably chained, plaintiff was denied
bathroom brakes by Defendant Griffin and, as
a result urinated helplessly on himself.

45. Defendant Griffin willfully, consciously,
singularly and maliciously lied about
actual incident times and other
documentary evidence to unjustifiably
maintain the plaintiff in torturous
chains on June 5, 2012, despite the
plaintiff having been relaxed and composed
after the initial incident.

46. Plaintiff suffered loss of sensation in
certain areas of his hands due to the
excessive chaining and later had to
seek medical attention for this.

Tarot Cards: Denial
to the Freedom of
<u>Religious Exercise, I</u>

47. Plaintiff was placed in Restrictive Housing
Unit (RHU) in the Corrigan Correction
Institution on May 10, 2014 and subsequent-
ly had his previously-approved Tarot

15

cards confiscated from his person by a lieutenant upon admission to RHU.

48. While in RHU, on the date of May 14, 2014, plaintiff wrote an Inmate Request form to Counselor Daily and Defendant Dougherty to have his Tarot cards returned to him while in RHU.

49. Counselor Daily responded to the plaintiff's request, stating that, per Captain Dougherty, this religious item would be returned to the plaintiff upon his release from segregation.

50. Plaintiff grieved this matter to Defendant Erfi who then denied the plaintiff grievance without any stated reasonable penalogical concern on 5\29\14 and assured the plaintiff that at no time would his Tarot cards be allowed on his person while housed in RHU.

Tarot Cards: Denial
to the freedom of
religious Exercise, II

51. 'On March 12, 2015, plaintiff, while house
in the RHU of the Cheshire Correction
Institution, submitted an Inmate
Request form to the RHU Canselor
for his Tarot cards to be brought to
be brought to him.

52. Defendant Watson, who is the Correction
Captain of the RHU, responded to the
plaintiff's request by simply writting
"Denied".

53. On May 18, 2015, Defendant Erfi denied
plaintiff's grievance regarding the
matter of his tarot cards.

54. The Connecticut Department of Correction,
per Its "TAROT CARDS, Memorandum of
Understanding And Use Agreement", allows
Wiccan and Santerian prisoners to possess
their tarot cards in their cells or
immediate living area, only.

55. Plaintiff signed this memorandum on April 22, 2005.

56. This memorandum, signed by the plaintiff, is maintained in his institutional file. and both Director of Religious Services and Institutional Religious Facilitators are aware of it.

## Claims for Relief

57. Defendant Maldonaldo continued to allow a policy in place where his officers were permitted to falsify documents to that policy in order to maintain the plaintiff and other prisoners in chains long after the initial incidents and when plaintiff's conduct was acceptable. This awareness by the policy-enforcer or holder (Defendant Maldonaldo) amounted to deliberence indifference to the plaintiff and who, by this, was subjected to cruel and unusual punishment, which is prohibited by the Eigth Amendment of the United States Constitution.

58. Defendant Maldonaldo maintained in place a long-standing unwritten policy that failed to provide for the evacuation of plaintiff and other uninvolved prisoners\inmates when chemical agents were deployed and/or failed to provide the usage of an exhaust fan to defumigate the chemical-affected area(s) of the prison. Defendants know- ledge and failure to reasonably act on that knowlege of these occurrences contracts violation under the Eighth Amendment to be free from cruel and unusual punishment.

59. Defendant Pafumi's action of ordering that the plaintiff be placed in chains and in a locked cell without plaintiff first having displayed any "acutely disruptive behavior" evinces the components of malicious and sadistic conduct of the defendant to satisfy a violation of plaintiff's rights to be free from cruel and unusual pun- ishment as guaranteed by the Eighth Amendment of the United States Constitution.

60. The deliberate failure of both defendants

Pafumi and Williams to release the plaintiff from restraints when plaintiff posed no physical threat to himself nor to propert or others violated plaintiff's Eighth Amendment Right to be free from cruel and unusual punishment, prohibited by this Amendment.

61. The conscious failure of Defendants Pafumi and Williams to release the plaintiff from chains in order that the plaintiff would have an opportunity to relieve himself for toilet brakes but allowed the plaintiff to soil himself with bodily waste endangered the plaintiff's health and wellbeing and thus implicates the Eighth Amendment's clause to be free from cruel and unusual punishment.

62. The purposeful omission and/or refusal of Defendant Griffin (a then female lieutenant) to professionally and decorously excuse herself from the disrobing procedure of the plaintiff and have a readily available male lieutenant step in for this process violated not only departmental policy but, also plaintiff fourth

20

Amendment Right of the United States Constitution
to a reasonable expectation of bodily
privacy.

63. Defendant Griffin's action\omissions
were full of malice and were undeniably
sadistic when she knowingly fabricated
incident times and other evidence to fur-
ther maintain plaintiff in chain when
plaintiff had been composed. Such mis-
conduct by a state actor is violative
of the Eighth Amendment and is action-
able under 42 U.S.C. § 1983.

64. Defendant Griffin's conscious and willful
actions were the direct cause of plaintiff
being in his bodily waste, thus endangering
his future health by denying him the
opportunity for bathroom breaks. Such
actions rightly implicates a cause of
action to be brought under 42 U.S.C §
1983 for violating plaintiff's Eighth Amend-
ment right to be free from cruel and
unusual punishment.

65. Defendant Erfi, being responsible for the

21

Enforcement of institutional policies, violated plaintiff right to exercise his religion when he denied plaintiff grievance on the matter and set forth a prospective prohibition for such a religious practice that was previously approved by his superiors. This defendant's action allows for action pursuant 42 U.S.C. §1983 for the violations of the Religious Land Use And Institutionalized Persons Act and the Free Exercise Clause of the First Amendment of the United States Constitution.

66.  Defendant Dougherty violated plaintiff's right to his religion when he disallowed plaintiff to possess his preapproved religious cards (tarot). His actions invokes suit under 42 U.S.C. §1983 for violating the Religious Land Use And Institutionalized Persons' Act and the Free Exercise Clause of the First Amendment.

67.  Defendant Watson violated plaintiff's right to his religion when he disallowed plaintiff to possess his preapproved religious cards (tarot). His actions invokes suit under 42 U.S.C. §1983 for

22

violating the Religious Land Use And Institutional-
ized Persons Act and the Free Exercise Clause
of the First Amendment.


### Prior Lawsuits Filed

Plaintiff has settled <u>Goode v. Blue</u>, 3:10-cv-
135 (MRK) in 2012, which involved excessive
force.

Plaintiff is currently litigating <u>Goode</u>
<u>v. Quiros</u>, 3:12-cv-1205 (AVC). This
actions involves excessive use of force by
Correction Officers.

Plaintiff has filed <u>Goode v. Bruno</u>,
3:10-cv-01734 (SRU), has survived Defendant's
motion for summary judgment and has
been appointed counsel. This action
consist of a religious deprivation not
identical to the claims made herein.
This action is yet pending.

## Previously Dismissed Actions or Appeals

Plaintiff currently has no case on appeal. Plaintiff' has had one case dismissed, that which the plaintiff can not recall the case caption and Grady v. Fancuff was dismissed on Defendant's Motion for Summary Judgment.

## Prayer for Relief

A. A declaratory judgment entered against Defendant Maldonaldo on all claims herein.

B. An injunction enjoining the defendant and or future defendants at the Northern Correction Institution for allowing lower officers to abuse the current restraint policy or rid of the policy in its entirety and to stop allowing uninvolved prisoners (such as the plaintiff) to be subjected to second-hand chemical agents at the NCI.

C. Compensatory and/or punitative relief to be awarded on account of Defendant Maldonaldo's actions or inactions.

D. A declaratory judgment entered against Defendants Pufumi and Williams.

E. Compensatory and/or punitive damages against defendants Pufumi and Williams.

F. A full declaratory judgment against defendant Griffin for violating plaintiff's fourth Amendment right of a minimal and reasonable expectation of bodily privacy

G. A compensatory and/or punitive relief for Defendant Griffin's intentionally prolonging the duration of plaintiff being in chains that resulted with him soiling his clothing

H. Injunctive relief, enjoining defendants from unjustifiably depriving plaintiff of a previously approved religious practice.

I. A declaratory judgment entered against.

25

defendants Erfi, Dougherty and Wattson

J.   Damages to be awarded to plaintiff under the first Amendment for the religious violation against defendants named here in.

K.   Cost, Expenses and attorney's fees.

L.   Any other relief as law and equity may provide.

<u>Jury Demand</u>

The plaintiff wishes to have a jury trial.

Plaintiff,

Jason Goode

Jason Goode

MacDougall-Walker
Correction Institution
1153 East Street South
Suffield, CT 06080

26

## Declaration Under Penalty of Perjury

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the complaint and that the information is true and accurate.

Executed at Suffield, Connecticut, on this 11th day of June   2015